THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL BARNETT, Defendant-Appellant.

Fourth District   No. 13364

Opinion filed April 25, 1977.

CRAVEN, P. J., dissenting.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

On November 29, 1974, after a trial by jury in the Circuit Court of Vermilion County, defendant Michael Barnett was convicted of the August 1974 murder of Bruce Leach. Defendant was then sentenced to 30 to 60 years imprisonment. He appeals, contending that the court erred in refusing his tendered self-defense instruction and in giving the State's tendered instruction IPI Criminal No. 3.14 concerning jury consideration of defendant's prior criminal conduct. Defendant also maintains that he was denied a fair trial because of improper remarks made by the prosecutor in his opening statement and closing argument.

Defendant was a bartender. On the evening of August 3, 1974, while at work, he purchased a pistol and some ammunition from Michael Nixon. Later, when defendant left work he loaded the pistol and placed it under

the seat in his car. After driving a lady friend home, defendant drove to another tavern where he stayed for awhile. Defendant apparently left that tavern at the same time as the victim, Bruce Leach, Alvin Nelson and several other people. Defendant drove his own car, Leach drove another car with Nelson as a passenger and the others were in two other cars. What happened next is disputed. In any event, after the four cars had driven around for some time, Leach's car collided with the rear of defendant's car. Defendant then got out of his car, went up to Leach's car and shot Leach, who soon died from the wound.

Prosecution witnesses testified that after the collision, defendant ran up to Leach's car, opened the front left door, cursed Leach, hit him and then shot him. Nelson, a prosecution witness, testified that shortly prior to the collision, defendant's car and two other cars were lined abreast, stopped at a stoplight and the car with Leach and Nelson in it stopped behind defendant's car. When defendant did not move forward immediately when the light turned green, Leach hollered to defendant to ask why. Defendant answered that he and the other two cars were racing. Nelson testified that Leach then told him that he, Leach, had seen that defendant had a gun.

Defendant's version was that Leach and Nelson had been tailgating him, bumping him continually. He slowed down several times to let their car pass but that car remained behind him. After defendant stopped and the Leach car ran into him, defendant put the pistol in his back pocket, got out of his car and walked to the driver's side of the other car. Defendant testified that at this time he was "kind of scared." He positioned himself by the driver's door of the other car and asked Leach, "What are you trying to do anyway, kill me or what?" Leach responded with an obscenity and both Leach and Nelson were "acting crazy." Both slurred their words and were both mumbling and yelling. Nelson leaned over to Leach and said, "Let's take him." Defendant felt that Leach and Nelson were likely to severely injure or kill him. Leach opened the door pushing defendant back a step. Defendant then pushed the door back, kicked Leach and pushed the door shut. As Nelson started to get out on his side, Leach also tried to open his door. Defendant then pulled the pistol from his pocket and shot Leach. Defendant testified that he shot Leach because he did not think that he could defend himself against both Nelson and Leach if both got out of the car.

Defendant's theory of defense is that he was entitled to use deadly force against Leach because he reasonably believed that the use of such force was necessary to prevent the unlawful use of such force against himself by Leach and Nelson. To instruct the jury on this issue defendant tendered and the court gave IPI Criminal No. 24.06 which stated:

"A person is justified in the use of force when and to the extent

that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

The People tendered and the court also gave IPI Criminal No. 24.09 which stated:

"A person who initially provokes the use of force against himself, is justified in the use of force only if the force is [*sic*] used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape the danger other than the use of force which is likely to cause death or great bodily harm to the other person."

Defendant maintains, however, that the court erred when it refused his tendered instruction No. 8. That instruction also concerned the issue of justification by self-defense but was not from IPI Criminal. It stated:

"The Court instructs the jury that if one is not the first assailant is [*sic*] in a place he has a lawful right to be and is put in apparent danger of his life or of suffering great bodily harm, he need not attempt to escape but may lawfully stand his ground and meet force with force, even to taking of his assailant's life."

An integral part of defendant's theory of defense was his contention that he was not the aggressor and thus need not have exhausted possible means of escape before using deadly force if otherwise justified in doing so. He does not dispute that the two instructions which were given fully set forth the law on the subject of justification as applied to this case. He concedes that IPI Criminal No. 24.09 operates as a limitation upon IPI Criminal No. 24.06 by setting forth the only situation in which one defending against an unlawful use of deadly force must exhaust means to escape before being justified in the use of deadly force. Defendant contends, however, that since IPI Criminal No. 24.09 stated that an aggressor must exhaust means of escape, he was entitled to an instruction stating directly that one not an aggressor need not exhaust means of escape.

■■ In support of his contention defendant relies upon the rule that a defendant is entitled to have the jury instructed upon his theory of the case. (*People v. Johnson* (1968), 100 Ill. App. 2d 13, 241 N.E.2d 584.) In elaborating upon that rule in *People v. Robinson* (1973), 14 Ill. App. 3d 135, 140, 302 N.E.2d 228, 232, however, the court stated:

"A court is under no obligation to give more than one instruction on the same subject matter and if an instruction is given which covers

the subject as well as the one refused, it is not error to reject the latter. (*People v. Jackson* (1969), 116 Ill. App. 2d 304, 253 N.E.2d 527; *People v. Lockett* (1967), 85 Ill. App. 2d 410, 229 N.E.2d 386.) The given instruction on self-defense clearly, concisely and impartially stated the applicable law; moreover, it was the pertinent Illinois Pattern Instruction which was required to be given under Rule 451. Ill. Rev. Stat. 1969, ch. 110A, par. 451."

■■ In the instant case, the instructions given were sufficient to make clear that only an aggressor need exhaust means of escape. Thus, these instructions "clearly, concisely and impartially stated the law." They were Illinois Pattern Instructions. Defendant's refused instruction was not. The court did not err in refusing that instruction.

IPI Criminal No. 3.14, given over defendant's objection, stated:

"Evidence has been received that the defendant has been involved in crimes other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's intent and knowledge. This evidence is to be considered by you only for the limited purpose for which it was received."

In *People v. Jackson* (1961), 22 Ill. 2d 382, 390-91, 176 N.E.2d 803, 807, *cert. denied*, 368 U.S. 985, 7 L. Ed. 2d 523, 82 S. Ct. 600, the court stated:

"While we are familiar with the rule that evidence proving or suggesting the commission of another crime is generally inadmissible if relevant only for the purpose of showing a disposition to commit crime and inviting an inference of guilt for that reason (*Farris v. People*, 129 Ill. 521; *Crane v. People*, 168 Ill. 395), at the same time evidence of other offenses may be admissible to show guilty knowledge (*DuBois v. People*, 200 Ill. 157), specific intent (*People v. Hobbs*, 297 Ill. 399), motive (*People v. Laures*, 289 Ill. 490), and design or plan (*People v. Rooney*, 355 Ill. 613)."

The State seeks to justify the giving of this instruction on the basis that defendant testified that he knew when he purchased the pistol that it was unlawful for him to do so because of his criminal record. Apparently to refute any implication that he bought the pistol to commit a homicide, defendant testified that he bought the firearm because the tavern had been robbed. On cross-examination he admitted that the employer sometimes had guns there and had not requested that defendant obtain any sort of gun. Defendant's purchase of the gun without his employer's request even though he knew that such purchase would subject him to criminal penalties and his loading of the gun when he left the tavern would be some evidence of not merely a disposition to commit crime but an intent to inflict deadly force against people who annoyed him by such acts as bumping his car from the rear.

■■■ Defendant also testified, however, that he had been convicted of an unlawful possession of a firearm charge about one year before trial. Defendant complains that IPI Criminal No. 3.14 told the jury that consideration could be given to that conviction as evidence of his guilt of murder. This would be impermissible. (*Jackson.*) The problem was ameliorated somewhat because the court gave IPI Criminal Nos. 3.12 and 3.13 which, together, told the jury that evidence of the *conviction* of a crime by any witness, including the defendant, could be considered in determining the credibility of that witness but that evidence of defendant's prior *conviction* should not be considered proof of his guilt of the crime for which he was being charged. The crime of a year before was presented to the jury on the basis that defendant had been convicted. The latter two instructions were drafted in terms of consideration of convictions and properly stated the law as to consideration of defendant's conviction. Evidence of defendant's unlawful purchase of the pistol with which Leach was shot was presented on the basis of defendant's conduct and no indication was given that he had been convicted of that offense. IPI Criminal No. 3.14 properly stated the law as to the jury's consideration of that conduct.

However, defendant's conviction for unlawful possession also involved conduct and the jury could have been somewhat confused by the instructions. This problem is further compounded because in closing argument, the prosecutor improperly told the jury that the unlawful possession conviction could, indeed, be considered as showing a propensity upon defendant's part to murder. Defendant did not object to this remark and did not cite it as error in his post-trial motion. Under such circumstances, unless plain error occurred, the error is waived. (*People v. Buckley* (1976), 40 Ill. App. 3d 750, 353 N.E.2d 4.) Here, however, we must not only consider whether the argument was plain error but also the effect the argument had upon the confusion that could have arisen by the giving of IPI Criminal No. 3.14.

■■ The foregoing problem must be considered in the context that the proof of defendant's guilt was very strong. That defendant would have feared for his life while traveling north on Illinois Route 1 in the Danville-Westville area with many other cars around appears unlikely. It would be even more unlikely that he would have gotten out of his car if he had such fears. Michael Nixon, the seller of the pistol, testified that later in the early morning hours after the killing, defendant told him that he didn't know why he shot Leach but that he just "ran back to the car, called Leach a name, cocked the hammer on the pistol and apparently fired." In view of the strength of the case, no plain error occurred nor did the confusion created over consideration of defendant's prior conviction as proof of guilt constitute reversible error.

■■ In opening statement, the prosecutor said that he would call the defendant's mother who would testify to damaging admissions made by the defendant. She was not called. This was error. (*People v. Weller* (1970), 123 Ill. App. 2d 421, 258 N.E.2d 806.) Because of the weight of the evidence, it was not plain error, however, and was waived when not cited in defendant's post-trial motion. (*Buckley.*) We also do not find the prosecutor's closing argument to have been unduly inflammatory.

We affirm.

Affirmed.

MILLS, J., concurs.

Mr. PRESIDING JUSTICE CRAVEN, dissenting:

I am unable to agree with my colleagues that there is no reversible error in this case. In my opinion it was improper and erroneous to give IPI Criminal No. 3.14. Evidence that the defendant bought a gun knowing it would be illegal to do so has no direct bearing on his intent or knowledge to commit murder upon the facts in this case. The facts indicate, on the contrary, that the offense was the result of an automobile-bumping incident on a highway under circumstances not even remotely foreseeable at the time of the purchase of the gun. The language of the majority that buying the gun, knowing it to have been an illegal act, shows "an intent to inflict deadly force against people who annoyed him by such acts as bumping his car from the rear" is in my view clear evidence of the error. Upon this record, the error in giving the instruction coupled with the erroneous, but not objected to, closing argument mandates a new trial.