THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY DATES (Impleaded), Defendant-Appellant.
First District (1st Division)    No. 79-1458

Opinion filed September 14, 1981.

Steven B. Muslin and Laurie Pathman, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Warren A. Zimmerman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendant Larry Dates was convicted of robbery and murder of Anthony Mason, and the attempt murder and aggravated battery of Nicholas Barnes. The trial court sentenced defendant to terms of 6 to 20 years for the robbery, 3 years and 4 months to 10 years for the aggravated battery, 25 to 50 years for the attempt murder, and 50 to

150 years for the murder, all sentences to run concurrently. From these judgments of conviction, defendant brings this appeal.

Defendant has raised the following issues:

(1) Whether there was sufficient evidence to prove defendant guilty beyond a reasonable doubt of the robbery of Anthony Mason;

(2) Whether the State presented evidence which makes it improbable that defendant committed a robbery so that defendant was not proved guilty beyond a reasonable doubt;

(3) Whether the State proved that defendant was guilty of the murder of Anthony Mason;

(4) Whether the court committed reversible error in refusing the tendered instruction on the defensive use of force by an initial aggressor;

(5) Whether the court erred in sentencing defendant and if such sentences are excessive.

For the reasons hereinafter stated, we affirm.

At trial the following pertinent testimony was adduced. Nicholas Barnes testified that on November 23, 1976, he was working with Anthony Mason at the Clark gas station at 2310 E. 79th Street in Chicago. At approximately 9 p.m., he and Mason were in the station, and defendant and another man, Charles Simpson, came in. Defendant requested change for a $50 bill, and in asking for the change, took off his shoe, and reached into his sock and pulled out the bill. Barnes told defendant that he could not give him change. Defendant requested change again, and Barnes refused again. Barnes testified that he had seen defendant about five times previously at the station and at his high school. He was not a friend of defendant.

Barnes went outside to service some cars that had arrived in the lot, and Mason, Simpson, and defendant remained in the station. The outside wall of the station consisted of floor-to-ceiling, see-through glass and Barnes observed that Mason was sitting at the desk in the station and that defendant and Simpson were standing up. Barnes saw defendant walk behind Mason into the back room of the station, where money, oil, and cigarettes were stored. Simpson was standing alongside Mason with his left hand in his pocket at this time. The back room was not open to the public.

Defendant returned from the back room after about 15 seconds with both hands in his pockets. Barnes observed that defendant stood next to Mason, who was still sitting at the desk. Defendant, with one hand in the pocket of his coat, took some money out of Mason's right hand, which was raised about head-high. Barnes had finished servicing the cars, and he then walked back towards the station and saw defendant and Simpson run out the front door towards 79th Street. Defendant turned towards Barnes as he was running away and said, "[Y]ou better watch out or

you're going to get robbed one day." Defendant and Simpson then ran east on 79th Street.

As Barnes opened the front door of the station, Mason yelled out, "I've just been robbed, call the police." Mason appeared excited and in a state of shock. Barnes called the police, who subsequently arrived. After calling the police, Barnes went into the back room and observed that the sum of $40, consisting of rolls of quarters and dimes, was gone. Barnes had placed the money there earlier in the evening.

Barnes testified that defendant was about 5 feet, 9 inches tall, weighed 130 pounds, had brown eyes, black hair, and a medium brown complexion. On the night of the robbery, defendant had been wearing a brown "middy length" leather coat with green pants and green shoes.

On the following day, November 24, 1976, Barnes and Mason were again working at the station. At approximately 8 p.m., while Barnes was in the back room counting money, Charles Simpson entered the station and began using a telephone. After seeing Simpson, Barnes went outside to get Mason. Barnes was carrying a .25-caliber automatic weapon, which belonged to Mason.

Barnes informed Mason that one of the men who had robbed them on the previous day was inside the station and on the phone. He handed Mason the gun. They walked back inside the station, where Barnes instructed Simpson to stand against the wall approximately 10 feet from them. Mason was pointing the gun towards the upper part of Simpson's body at this time. Defendant then entered the station dressed as he had been on the previous evening and Barnes told him to stand against the wall with Simpson. Barnes asked defendant and Simpson why they had committed the robbery, and both denied participation. Barnes walked towards the telephone and told defendant and Simpson that he was going to call the police and have them picked up.

Barnes testified that as he was talking to the police, he told defendant and Simpson to take off all their clothes. On cross-examination, Barnes stated that he told them to strip to their underwear. He was afraid that they might have a weapon and might try to run out the door. Defendant immediately grabbed Simpson's arm and pulled Simpson in front of himself. As he did so, defendant reached into the belt of his pants and pulled out a large gun. When Barnes saw the butt of the gun, he told Mason to "take" him, by which he meant that Mason should defend himself.

Barnes dove into the back room and heard several shots. He got up immediately and looked for something that could be used to protect himself. He observed that Mason had been shot in the stomach and was leaning against the desk. Mason was still holding his gun at this point. He was not pointing it at defendant and was not firing it. As defendant stood three feet from Mason and prepared to shoot Mason again, Barnes

jumped out of the back room and grabbed the arm with which defendant held the gun. Defendant pushed Barnes back, turned around, and shot Barnes after sticking the gun in his right side. The force of the shot pushed Barnes into the back room, where he fell on the floor.

Barnes saw defendant run out of the front door of the station, and subsequently, an ambulance took Barnes to the hospital. The parties stipulated that Anthony Mason died at South Shore Hospital on the night of the shooting. An autopsy revealed that the cause of Mason's death was a bullet wound puncturing the pancreas, the inferior vena cava, and other arteries.

Another stipulation provided that Charles Simpson had sustained two gunshot wounds and was admitted to Jackson Park Hospital. One bullet was removed from Simpson during surgery on December 6, 1976, and was turned over to the Chicago Police Department. Another bullet was never removed from Simpson.

Officers Michael Rucker and Paul Williams of the Chicago Police Department both testified concerning their attempt to apprehend defendant at the time of and shortly after the shootings on November 24. At about 8:15 p.m., the officers were in uniform and traveling in a marked squad car, going westbound on 79th Street at Crandon. The officers heard gunshots coming from the gas station and had a full view of the station.

Simultaneously, the officers received a radio call that shots were being fired at 2310 East 79th Street. The dispatcher stated that a robbery might be in progress and that he was able to hear shots over the telephone. Both officers observed three men inside the gas station, two of whom had guns. The officers testified that they were able to hear the reports of the guns and that both guns were firing. Officer Williams stated that he heard approximately six or seven reports.

Officer Rucker described the location of the three men inside the station. One man, whom the officer identified as Anthony Mason, was standing near the telephone, slightly bent over. The telephone was on a wall across from the front door and next to the entrance to the back room. Defendant was standing by the front door and both Mason and defendant were holding guns. A third man was standing in the doorway leading to the back room.

Defendant ran out of the station carrying a gun. Officer Williams drove the squad car alongside defendant. Standing five feet from the car defendant pointed the gun towards it as the officers were getting out. Both officers shouted, "Halt, police," and as defendant pointed the gun in the direction of the officers, both officers shot at him. Defendant fell to the ground, dropped his gun and began to run away. Defendant ran south on Crandon, and then into an alley and through a gangway between two buildings. Officer Rucker fired at defendant through the gangway, and

was then called by Officer Williams and told to return to the alley. Officer Rucker called for assisting units, and several cars arrived on the scene. Officer Williams recovered defendant's weapon (people's exhibit No. 12) where defendant had fallen down, which was a .38-caliber revolver. The serial number of the gun was obliterated, and three expended .38-caliber cartridge casings were found in the gun. There were no live bullets in the gun. Defendant was subsequently arrested on a burglary charge in Los Angeles, California, in August 1977.

Officer Michael McGuire, an evidence technician with the Chicago Police Department, testified that he recovered five cartridge casings, a live .25-caliber bullet, and a bullet fragment from the gas station area and was unable to recover fingerprints from a gun obtained from Officer Williams or from various surfaces inside the gas station or from the cartridge casings that he recovered.

Officer Joseph Celovsky, a firearms examiner with the Chicago Police Department, testified that he was unable to conclude that people's exhibit No. 12, defendant's recovered weapon, either was or was not the weapon that fired the bullet removed from Barnes.

Defendant elected not to testify, and thereafter the jury found defendant guilty of the robbery and murder of Anthony Mason and the attempt murder and aggravated battery of Nicholas Barnes. From these judgments of conviction, defendant brings this appeal.

I

Defendant's first contention is that he was not proven guilty of robbery beyond a reasonable doubt because the sole evidence of a robbery of the victim (Mason) by the defendant consists of the testimony of Barnes. Defendant also claims that the State presented evidence which makes it improbable that defendant committed a robbery. The above two issues are related and will be considered together. Defendant claims that Barnes did not testify that he witnessed any use of force or threatened imminent use of force by defendant. Barnes merely observed defendant go into a back room and come out again 15 seconds later with his hands in his pocket. He heard no conversation, saw no weapons and testified to no threats or force of any kind. Barnes testified that he had no reason to believe that a robbery was taking place when he saw Mason hand the defendant some money. The evidence consists solely of Barnes' testimony describing certain nonverbal behavior of the defendant witnessed some 15 feet away. Defendant claims that his conviction should be reduced to theft.

The People maintain that Barnes witnessed the robbery and that after Barnes told defendant that he could not provide change for a $50 bill, Barnes went outside to service some cars. Since the outside walls of the

station consisted of floor-to-ceiling see-through glass, Barnes was able to witness events in the station. While Simpson was standing next to Mason with his hand in his pocket, Barnes saw defendant walk behind Mason into the back room of the station, where money, oil, and cigarettes were stored. The back room was not open to the public. Defendant returned from the back room about 15 seconds later with both hands in his pocket and stood next to Mason, who was still sitting at the desk, and with one hand in the pocket of his coat, took some money out of Mason's right hand, which was raised about head-high. Shortly thereafter, Barnes saw defendant and Simpson run out the front door towards 79th Street. Defendant turned towards Barnes as he was running away and said "you better watch out or you're going to get robbed one day." As soon as defendant fled, Barnes re-entered the station and Mason yelled out, "I've just been robbed. Call the police." The People maintain that the evidence overwhelmingly demonstrates that defendant took money from Mason by instilling such fear in him as to induce Mason to part with the money for the sake of his safety.

The most powerful demonstration of the forcefulness of defendant's crime is the fact that Mason came to work on the following day armed with a .25-caliber automatic pistol, which Barnes had never seen before. Mason had not had the gun on the 23d, and brought it to work on the 24th because of the previous night's robbery. His purpose in bringing the gun to work was clearly to protect himself. As he prepared to leave the station temporarily to obtain food, Mason gave the gun to Barnes for the latter's protection. When Barnes subsequently informed him that one of the robbers had returned to the station and had begun to use the telephone, Mason took the gun back. Certainly Mason would not have taken these steps to protect himself from another robbery if defendant's taking of the money on the previous night had not been by threat of imminent force.

The requirement in robbery prosecutions that the taking of property be by the use of force or by threatening the imminent use of force (Ill. Rev. Stat. 1975, ch. 38, par. 18—1), is satisfied "if the fear of the * * * victim was of such nature as in reason and common experience is likely to induce a person to part with his property for the sake of his person." (*People v. Whitley* (1974), 18 Ill. App. 3d 995, 999, 311 N.E.2d 282.) "[I]t is [also] acknowledged by the authorities that the taking of property may be peaceful but the departure with the same may be forceful." *People v. Heller* (1971), 131 Ill. App. 2d 799, 802, 267 N.E.2d 685.

Defendant erroneously relies on *People v. Williams* (1976), 42 Ill. App. 3d 134, 355 N.E.2d 597 where the defendant's conviction of attempt robbery was reduced to attempt theft, where the court found insufficient evidence of the use of force or the threat of imminent force. Evidence that the defendant in *Williams*, with both hands in his pockets, had asked

a laundromat attendant to fill a paper bag with money, was deemed inadequate to establish the forcefulness element of attempt robbery. In contrast, the instant case involves evidence of forcefulness beyond the fact that defendant and Simpson concealed their hands in their pockets at various points during the robbery. This evidence includes Mason's shocked and dazed appearance after the crime, his exclamation that he had been robbed, and his effort to protect against another robbery by arming himself on the following night. Defendant's warning to Barnes that he should "watch out" lest he also be robbed supports the inference of forcefulness, particularly where defendant returned to the station the following night, concealing in his waistband the gun that he then used to attack Mason and Barnes.

Defendant also relies on *People v. Was* (1974), 22 Ill. App. 3d 859, 318 N.E.2d 309, and asserts that Mason's statement "I've just been robbed" is likewise not sufficient proof that force or threat of imminent force was employed against Mason by defendant. In *Was*, the only evidence that the defendant had taken property of value from the victim consisted of a police officer's hearsay testimony that the victim had said that defendant had "robbed him." The victim in *Was* died prior to trial from unrelated causes. In the instant case, Anthony Mason's statement that he had been robbed was merely a portion of the evidence that defendant's taking of the money was accomplished by force or by threatening the imminent use of force.

Defendant further claims that *People v. Rossililli* (1962), 24 Ill. 2d 341, 181 N.E.2d 114, supports his argument that there was insufficient evidence of force or threat of imminent force by defendant toward Mason to constitute robbery. In *Rossililli*, the supreme court reversed the defendant's conviction of rape and robbery where the evidence was so improbable and unsatisfactory as to leave a grave and substantial doubt of the defendant's guilt.

■■ In the case at bar, the State claims that the fact that money was taken from Mason and from the back room of the station is undisputed. Barnes testified that $40 in rolls of quarters and dimes, which he had placed in the back room earlier in the evening, were determined missing shortly after the robbery. Moreover, Mason's shocked and dazed appearance after the crime, his characterization of it as a robbery, and his subsequent effort to use an automatic pistol for self-protection demonstrate that Mason was threatened with the imminent use of force during the robbery. It is immaterial that defendant's actions during the robbery, including his entrance into a private area of the station, while sufficient to arouse Barnes' suspicions were not so violent as to induce Barnes to abandon his work in the lot or to run to Mason's aid. Although defendant minimized the importance of his and Simpson's concealing their hands in their

pockets at various points during the crime, it is clear that such activity, combined with a demand for money, would have appeared threatening to any reasonable person. The evidence overwhelmingly demonstrates that Mason was in fact threatened. Thus the State argues that the cases cited by defendant are not in point and that the evidence adduced at trial established beyond a reasonable doubt that the offense of armed robbery was committed by defendant at the time and place as charged and that the conviction should stand. We agree.

## II

Defendant next contends that it is clear from the above stated evidence that the State has not proven beyond a reasonable doubt that defendant was the criminal agency that caused the death of Mason because the evidence strongly supports the hypotheses that Mason died as a result of one of his own bullets which ricocheted off the walls of the station house. Barnes testified that he saw Mason fire a pistol at Simpson and the defendant. However, no one saw the defendant fire his gun. Officer Rucker testified that he did not see defendant fire his gun. Mason's pistol was a .25-caliber automatic, and the defendant's gun was a .38-caliber revolver. Chicago police officer McGuire testified that he found four .25-caliber spent cartridges in the station house, and one near the pumps. A ballistics expert with the Chicago police testified that the five discharged cases which Officer McGuire recovered at the gas station were fired from the same .25-caliber semi-automatic weapon. None of the bullets recovered from the scene of the incident were determined to have been fired from a .38-caliber revolver. Moreover, the bullet which lodged in Mason and which was removed from him at South Shore Hospital was subsequently lost by the South Shore Hospital personnel.

The People maintain that there is no evidence that Simpson was unarmed when he entered the station on November 24 and began to use the telephone. He was soon confronted by Barnes and Mason, with Mason pointing a gun towards the upper part of Simpson's body. Defendant then entered the station with his gun and several shots were fired. The police officers testified that they were able to hear the reports of the two guns and that both guns were firing. Officer Williams stated that he heard approximately six or seven reports. It does not necessarily follow that Simpson was unarmed because he did not produce a gun.

■■ The evidence upon which defendant's conviction of murder was based was circumstantial in that Barnes did not testify that he saw defendant fire his gun in the direction of Mason. However, Barnes did testify that he heard a lot of shots fired, and that "I saw Anthony Mason shot in the stomach region and he was laying on the desk, and Larry Dates ran in front of the doorway of the back room and was aiming his gun

getting ready to shoot him again." To warrant conviction of a crime based on circumstantial evidence, the proof must be of a conclusive nature, leading on the whole to a satisfactory conclusion, and producing a reasonable certainty that defendant was the responsible agency. Every reasonable hypothesis of the defendant's innocence which finds a basis in the evidence or lack thereof must be excluded in order to render a conviction. (*People v. Stokes* (1981), 95 Ill. App. 3d 62, 419 N.E.2d 1181.) Here, the evidence sufficiently disposed of the only reasonable hypothesis of defendant's innocence, which is that Mason's death resulted from his own gun and the authorities cited by defendant in support of his position are misplaced as to the circumstances of this case. We believe it is peculiarly within the province of the jury to weigh the evidence, and credibility of witnesses and determine the facts. Based on this record, the jury properly found defendant guilty of the offense of murder beyond a reasonable doubt.

### III

Defendant next asserts that the court committed reversible error in refusing the tendered instruction IPI Criminal No. 24.09 on the defensive use of force by an initial aggressor. Defendant claims that the State, through the testimony of its witness, Barnes, introduced the theory and evidence that the defendant was the initial aggressor because of the alleged robbery on November 23 and that upon the return on November 24, Barnes and Mason, perceiving the defendant to be the initial aggressor on the previous evening, responded to the defendant with deadly force. The court did give the defendant's general tendered instruction which states the circumstance under which a person is justified in the use of force to defend himself.

The State argues that it is undisputed that defendant went to the station on the day after the robbery concealing a .38-caliber revolver in his waistband and that the inference that defendant planned to commit another robbery of Mason or to fire upon Mason and Barnes is inescapable. Defendant has not admitted committing the acts and has invoked the defense of self-defense and justifiable use of force as a justification for his conduct and concedes for the purpose of this argument only that the State claims the robbery was an initial act of aggression. Where defendant returned to the station defendant cannot claim justification in his use of deadly force upon Mason's attempt to hold him for the police. Moreover, after shooting Mason once in the stomach, defendant approached to within three feet of Mason and prepared to shoot him again. Defendant cannot claim self-defense or the defensive use of force under the facts and circumstances of this case.

In *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31, the court held that the defendant is not entitled to a self-defense instruction, even

where he admits committing the act, unless there is "some evidence of self defense presented at trial." The court held on the facts of that case that the evidence presented was insufficient to warrant a self defense instruction. To hold otherwise the court stated would allow a defendant to demand unlimited instructions based upon the "[m]erest factual reference or witness' comment." 63 Ill. 2d 534, 541, 349 N.E.2d 31, 34.

■■ In the present case the court gave the defendant's self-defense instruction IPI Criminal No. 24.06 but declined to give the defensive use of force by an initial aggressor instruction IPI Criminal No. 24.09, as requested by defendant, as being inappropriate for lack of evidence in support thereof. We have examined the cases cited by defendant and find that they are factually distinguishable. We therefore hold that the instruction of self defense was sufficient under the facts and circumstances of the case for the jury to evaluate defendant's alleged conduct and that it was not error to refuse such tendered instruction because the evidence failed to meet the minimal level required to warrant such instruction. *People v. Bratcher*; see also *People v. Barnett* (1977), 48 Ill. App. 3d 121, 362 N.E.2d 420.

Defendant's fourth argument on appeal is that the court erred in the imposition of sentences of 50-150 years for the murder of Anthony Mason, 25-50 years for the attempted murder of Nicholas Barnes, 6-20 years for the robbery of Anthony Mason, and 3 years 4 months-10 years for the aggravated battery of Nicholas Barnes as such sentences are excessive and should be reduced. Defendant argues that the alleged murder and attempt murder occurred during an affray and were not premeditated; also, that the defendant's sentence for the robbery conviction was likewise excessive in view of the fact that defendant allegedly took only $40 from Mason. Moreover, defendant was only 21 years old at the time of the alleged offenses and that his future goals included finding a job, going to a trade school for tailoring and getting married.

■■ In the absence of abuse of discretion, the sentence of the trial court will not be altered. The trial court is normally in a superior position to determine the punishment to be imposed than the courts of review. (*People v. Lykins* (1978), 65 Ill. App. 3d 808, 382 N.E.2d 1242; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Under the facts and circumstances of this case it cannot be said that the sentences imposed constitute an abuse of discretion.

For the reasons expressed in this opinion, the judgment of the trial court is affirmed.

Judgment affirmed.

GOLDBERG and O'CONNOR, JJ., concur.