THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CONNIE DOWNEY, Defendant-Appellant.

Second District No. 2—86—0214

Opinion filed October 27, 1987.—Rehearing denied December 4, 1987.

324

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel and Peter L. Rotskoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Connie Downey, was found guilty in a bench trial of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), two counts of robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—1), and of misdemeanor theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1)) involving the January 19, 1985, armed robbery of Lisa Williams at Dominick's grocery store in Waukegan, Illinois. In a separate jury trial, defendant was found guilty of the January 4, 1985, armed robbery of Demetre Sarikoudis at Bozini's Pharmacy in North Chicago, Illinois. The cases were consolidated for sentencing, and two consecutive 30-year terms of imprisonment were imposed on the armed robbery convictions. No sentence was imposed on the robbery or theft convictions.

Defendant raises the following issues on appeal: (1) whether there was sufficient evidence of the use of force or threat of the imminent use of force to support the finding of guilty of the armed robbery of Lisa Williams; (2) whether the proof was sufficient to show the presence of a dangerous weapon in order to prove defendant guilty of the armed robbery of Lisa Williams; (3) whether the trial court's refusal in a motion *in limine* ruling before both trials to allow defendant to introduce evidence of insanity or involuntary intoxication due to chronic drug addiction violated his constitutional right to present a defense; (4) whether the trial court's denial of defendant's motion to suppress statements was against the manifest weight of the evidence; (5) whether the trial court erred in giving an instruction in the Sarikoudis armed robbery trial; and (6) whether defendant's sentences were excessive.

Prior to trial, defendant moved to suppress various statements he made to police officers of the Waukegan police department, contend-

ing that he did not knowingly waive his *Miranda* rights. At a suppression hearing, Waukegan police detective Ryan Milot testified that he and Waukegan police detective Howard Pratt met with defendant in an interview room at the police department. Pratt read defendant his *Miranda* rights from a preprinted form, and defendant indicated orally that he understood those rights. Pratt then signed a waiver of rights form and gave it to defendant to read and sign. Defendant appeared to read it, but refused to sign. Defendant did not request an attorney at any time.

Both officers then proceeded to question defendant about various robberies under investigation. Defendant, in response to the questioning, asked the officers what benefit he might receive if he were to make a statement implicating himself in one of the robberies. The officers replied that they could not make any promises and did not know what would happen to defendant or how many years in jail he might receive. After an hour to an hour and one-half, defendant said he did not want to speak with them and asked to speak with Lt. Hansen, at which time both officers left the interview room and advised Lt. Hansen of defendant's request. Lt. Hansen entered the interview room alone, exited a short time later, and informed Milot and Pratt that defendant was willing to cooperate and give a statement.

Both officers reentered the room, without Lt. Hansen, and reminded defendant of his rights, without actually reading the rights again. Defendant stated he understood his rights and was ready to talk. Defendant proceeded to give separate statements concerning 10 robberies.

Lt. Mark Hansen, who was defendant's friend and had known him for 15 years, testified that when he went into the interview room, defendant asked him how many years he would get for the robbery. Lt. Hansen responded he did not know, but thought it could be quite a few. He then asked defendant why he committed the robberies, to which defendant responded he had done them because he needed money. In response to further questioning, defendant indicated he had committed the various robberies under investigation. When asked whether he would make a statement to Officers Milot and Pratt, defendant indicated he would. Defendant did not ask for an attorney.

Officer Howard Pratt confirmed that defendant was read his *Miranda* rights from a preprinted form which defendant indicated he understood. Defendant was given a copy of the rights waiver form which he appeared to read and indicated he understood, but refused to sign. Pratt then stated that they asked defendant about one of the robberies, and defendant responded that he would talk, but he wanted

to know how much time he would get if he did. Pratt informed defendant that he could not promise whether he would get seven years or 30 years. Pratt testified that a similar dialogue continued for about an hour to an hour and a half, during which time they questioned him about different armed robberies. At the end of that time, defendant asked to speak with Lt. Hansen.

Officer Pratt then confirmed the intercession of Lt. Hansen. When he and Milot reentered the room and asked defendant if he was still aware of his rights, he stated he was, and they began to question defendant. Officer Pratt confirmed that defendant gave statements regarding his involvement in the various robberies. Defendant did not request to see attorney Jed Stone.

Defendant testified that the officers began questioning him and did not inform him of his rights until after he asked to contact attorney Jed Stone or the public defender. He stated that the officers refused to let him contact a lawyer and persisted in their questioning about the various robberies. Defendant denied asking the officers about potential punishments or if the officers could make a deal. Furthermore, he stated that his reason for wanting to talk to Lt. Hansen was because the officers were trying to persuade him to talk by offering him deals that he knew they had no authority to offer.

Defendant said he was tired and decided to go ahead and confess to Lt. Hansen. Defendant confirmed that when Officers Pratt and Milot reentered the room, although they did not reread him his *Miranda* rights, they did remind him of his rights. Defendant then admitted his involvement in each of the 10 robberies to the officers.

After noting the conflicting testimony as to whether defendant exercised his right to remain silent, the trial court resolved the credibility question in favor of the police and ruled that defendant did not refuse to talk and voluntarily waived his right to remain silent. The court denied the motion to suppress.

Just prior to trial, the State filed a motion *in limine* requesting that the court preclude defendant from introducing evidence of an insanity or drug compulsion defense based on his cocaine addiction. The State contended that a "drug compulsion" defense based on his addiction was not recognized in Illinois and defendant had not submitted psychiatric reports pursuant to its discovery request to support an insanity defense.

At the hearing on the motion, the State argued that defendant was planning to present a "mutant" of the affirmative defenses of insanity and intoxicated or drugged condition, and that since that defense is not recognized in Illinois, the defendant should not be allowed

to present it. Defense counsel conceded that the proposed defense was a "hybrid," but argued that under *People v. Brumfield* (1979), 72 Ill. App. 3d 107, 390 N.E.2d 589, defendant should have the opportunity to present evidence in support of this defense to the jury and should not be barred by a motion *in limine*. Defense counsel further argued that he would offer nonmedical expert witnesses to demonstrate that defendant had a cocaine addiction and because of that addiction he could not conform his conduct to the requirements of the law.

The judge then ruled in favor of the State, at which time defendant asked for a recess. After the recess, defense counsel offered to proceed on a drugged condition defense under section 6—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 6—3) only. In response to questioning from the bench, defense counsel stated that he would proceed under both sections 6—3(a) and (b). After an exchange with defense counsel, the court ruled that addiction could not be considered the basis for an involuntary intoxication defense and rejected defendant's proposed defense.

After the lunch recess, the court modified its ruling to allow defendant to proceed with a defense of involuntary drugged condition under section 6—3(b). The court specifically emphasized that defendant could offer other evidence of involuntary use, but not evidence of addiction to support the defense.

At the bench trial on the armed robbery at Dominick's grocery store, Lisa Williams, the victim, testified that she was working at the cash register at approximately 6:55 p.m. on January 19, 1985, when a man approached her register. After he gave her a dollar to pay for a TV Guide, she opened the register. Williams stated that at that time he just shoved her back away from the cash register. As the man reached into the register drawer, she left the register and went to a semi-enclosed office area located about 10 feet away. She was terrified and did not see anything else.

Mr. Richard Keske, a night manager at Dominick's, stated that he was near the register area of the store at the time of the incident. He observed a man push Williams away from her cash register and saw him put his hands into the register drawer. Keske then approached the man, grabbed his shoulders from behind, and pushed him into the register. The man twisted away and stated he had a knife and was going to cut Keske. Keske put up his hands, at which time the man cut two of his fingers with a knife. Immediately after the confrontation, the man ran from the store. Keske identified defendant in court as looking like the man.

Officer Howard Pratt related defendant's oral confession of the Dominick's robbery to the court. Defendant offered no witnesses.

Defendant was found guilty of armed robbery, two counts of robbery, and misdemeanor theft.

The following day, defendant's trial on the armed robbery of Demetre Sarikoudis at Bozini's Pharmacy commenced. Sarikoudis testified to the following. On January 4, 1985, he was working at a cash register near the front of the pharmacy when a man, later identified in court as defendant, approached the counter, placed a bag of candy on the counter, and handed a dollar to him. After he opened the register drawer, defendant displayed a knife in his left hand, told him to move away, and then grabbed the money from the register drawer. After taking the money, defendant ran from the store.

Officer Milot testified to retrieving a blue Navy pea coat belonging to defendant which Sarikoudis described the robber as wearing.

Officer John Van Dien of the North Chicago police department testified to a tape recording he made during an interview with defendant wherein defendant admitted committing the Bozini Pharmacy armed robbery. The tape was played to the jury.

Teresa Garrett, a victim of an armed robbery allegedly committed by defendant at a Wendy's restaurant, testified that on January 1, 1985, while she was working the register, a tall, black man approached her register and ordered french fries. He gave her a dollar, and after she opened the register, he reached in with his right hand and grabbed the cash drawer. She also grabbed the drawer and a struggle ensued. The man then displayed a steak knife; she let go of the drawer, and the robber grabbed the drawer and ran from the restaurant. Garrett then described the robber's clothing and identified defendant's Navy pea coat as the same coat worn by the robber at Wendy's.

Officer Michael Luff of the Park City police department testified that he interviewed defendant regarding the Wendy's robbery. According to Officer Luff, defendant admitted committing the robbery, and his admissions were consistent with Garrett's description of the robbery.

The defense offered no witnesses. The jury later returned a verdict of guilty of armed robbery.

■ Defendant's first contention is that the State failed to prove him guilty of armed robbery beyond a reasonable doubt in the Dominick's grocery store armed robbery because there was no evidence of the use of force or a threat of the imminent use of force against the victim, Lisa Williams. He argues that there was no "sensi-

ble or material violence" to the victim as she was merely pushed out of the way and the force used against Richard Keske, the manager, occurred after the robbery from Williams and he was not charged with any crime against Keske. The State responds that the force requirement in the robbery statute is satisfied if the victim's fear was of such a nature to induce her to part with her property.

To prove an armed robbery, the State must show that the accused committed a robbery while carrying, or armed with, a dangerous weapon. (Ill. Rev. Stat. 1985, ch. 38, par. 18—2.) A conviction of robbery requires that the accused took property from the person or presence of another by the use of force or by threatening the imminent use of force. (Ill. Rev. Stat. 1985, ch. 38, par. 18—1; *People v. Taylor* (1984), 101 Ill. 2d 508, 514, 463 N.E.2d 705.) The degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will. (*People v. Bowel* (1986), 111 Ill. 2d 58, 63, 488 N.E.2d 995.) The gist of the offense of robbery is the force and intimidation used in taking from the person against his will. *People v. Williams* (1961), 23 Ill. 2d 295, 301, 178 N.E.2d 372.

■ In *People v. Patton* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174, our supreme court, in noting the difference between the offenses of theft from the person and robbery in the context of a purse snatching incident, considered that where an article is taken "without any sensible or material violence to the person," the offense will be held to be theft from the person rather than robbery. (*People v. Patton* (1979), 76 Ill. 2d 45, 52, 389 N.E.2d 1174.) The court in *Patton* also noted that Illinois follows the common law rule that " 'stealing is by violence whensoever it is effected by doing any the least injury to the person, or whensoever the act of taking is accompanied by any degree of force employed to overcome resistance to such taking.' " (76 Ill. 2d 45, 49, 389 N.E.2d 1174, quoting with approval from Michael & Wechsler, Criminal Law and Its Administration 383 n.2 (1940); see *People v. Houston* (1986), 151 Ill. App. 3d 718, 721, 502 N.E.2d 1174.) It has also been stated that the element in robbery of the use of force or threat of imminent force is satisfied if fear of the victim was of such nature as in reason and common experience is likely to induce a person to part with his property for the sake of his person. *People v. Dates* (1981), 100 Ill. App. 3d 365, 371, 426 N.E.2d 1033.

■ In the instant case, Lisa Williams testified that she was shoved back away from the cash register by defendant, who then proceeded to reach into the register. She was terrified and fled from the

area. In defendant's statement to police, he admitted coming around the counter, pushing Williams out of the way, and taking money from the cash register. In our opinion, there was a showing under these circumstances of a sufficient force to put Williams in fear as to overpower her will so as to satisfy the required elements of robbery. See *People v. Bowel* (1986), 111 Ill. 2d 58, 64, 488 N.E.2d 995; *People v. Kennedy* (1980), 88 Ill. App. 3d 365, 368, 410 N.E.2d 520.

The cases relied on by defendant that the force used here was only incidental to the taking of the property are clearly distinguishable as they involve a purse snatching without the type of force used here.

■ ■ Defendant next maintains that, assuming a robbery was committed, there was insufficient proof that a weapon was used during the course of the robbery of Lisa Williams. In essence, defendant argues that the knife was only shown and used against Richard Keske after the offense was completed against Lisa Williams, the victim as charged in the indictment and, accordingly, there was no evidence that a weapon was ever displayed to or threatened against Lisa Williams. The State responds that defendant's mere possession of the knife during the commission of the robbery constituted an armed robbery within the definition of the armed robbery statute.

The armed robbery statute provides:

"A person commits armed robbery when he or she violates Section 18—1 while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a).)

Prior to the 1978 amendment of this statute by Public Act 80—1099, effective February 1, 1978, a person committed armed robbery by violating section 18—1 (robbery) while armed with a dangerous weapon. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a).) We note that cases decided under the prior armed robbery statute found the existence of a dangerous weapon in the possession of an accused at the time of the robbery to be sufficient to prove armed robbery even though the weapon itself was not seen or described by the victim. See, *e.g., People v. Elam* (1972), 50 Ill. 2d 214, 220, 278 N.E.2d 76; *People v. Rose* (1979), 75 Ill. App. 3d 45, 54-55, 393 N.E.2d 698.

We agree with the State that the present language of the armed robbery statute makes the mere carrying on or about one's person of a dangerous weapon during the commission of a robbery sufficient to sustain a conviction for armed robbery even without the displaying to or use of the weapon against the victim. Language similar to the present armed robbery statute is contained in the armed violence stat-

ute (Ill. Rev. Stat. 1985, ch. 38, par. 33A—1), and has been held in *People v. Haron* (1981), 85 Ill. 2d 261,. 422 N.E.2d 627, not to require that there be a connection between the underlying felony and the fact that the felon was armed with a dangerous weapon while he committed the felony. (85 Ill. 2d 261, 267-68, 422 N.E.2d 627; see *People v. Alejos* (1983), 97 Ill. 2d 502, 507-08, 455 N.E.2d 48.) In *Haron*, the court concluded that the Illinois General Assembly had intended to extend the number of circumstances in which the presence of a weapon is prohibited. (*People v. Haron* (1981), 85 Ill. 2d 261, 268, 422 N.E.2d 627.) As was later stated in *Alejos*, "[t]he presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistance." *People v. Alejos* (1983), 97 Ill. 2d 502, 508, 455 N.E.2d 48.

We believe the same reasoning is applicable to the armed robbery statute. It is a primary rule of statutory construction that the intention of the legislature should be ascertained and given effect. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 674.) In so doing, courts look first to the language of the statute (89 Ill. 2d 469, 475, 433 N.E.2d 674; *People v. Haron* (1981), 85 Ill. 2d 261, 266-67, 422 N.E.2d 627), which is the best indication of the content of the drafters. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475, 433 N.E.2d 647.) Here, the plain language of the armed robbery statute requires only that to commit the offense of armed robbery an accused violate the robbery statute while he or she carries on or about his or her person, or is otherwise armed with, a dangerous weapon. The dangerous weapon must be shown to have been carried during the robbery, but the statute does not provide it must be displayed or used.

Defendant argues, however, that what constitutes a dangerous weapon under the armed robbery statute often turns on the manner in which the object is used or displayed. Thus, defendant contends that its use is necessary in determining whether an armed robbery is committed.

■ This contention misses the mark. The use of the particular object may be relevant in certain circumstances to determine whether the object is a dangerous weapon. However, this is a distinct and separate issue from whether it is carried on or about the person during the commission of the crime of robbery. Here, the evidence clearly shows defendant carried a knife at the time of the commission of the robbery of Lisa Williams because he displayed and used it upon being confronted by Mr. Keske while taking money from the cash register immediately after accosting Williams. The knife in question here is of such a character that as a matter of law it is a dangerous weapon.

Thus, in the case before us, there was sufficient proof to find defendant guilty of armed robbery.

■■ Defendant next contends that the trial court deprived him of his constitutional right to present a defense when it granted the State's motion *in limine* which barred him from presenting evidence of his addiction. Defendant claims that his addiction produced a mental disease which would support an insanity defense. He also maintains that evidence of his cocaine addiction could also have supported a defense of involuntary intoxication under section 6—3(b) of the Criminal Code of 1961. Ill. Rev. Stat. 1985, ch. 38, par. 6—3(b).

A reviewing court will not reverse a trial court's grant or denial of a motion *in limine* absent a manifest abuse of discretion. (*People v. Williams* (1978), 60 Ill. App. 3d 529, 532, 377 N.E.2d 367.) In granting a motion *in limine*, the trial court must be certain that such action will not unduly restrict the opposing party's case. (*People v. Clark* (1984), 129 Ill. App. 3d 374, 377, 472 N.E.2d 814.) Although a motion *in limine* should be used with caution so as not to deprive a criminal defendant of a legally viable defense (*People v. Brumfield* (1979), 72 Ill. App. 3d 107, 113, 390 N.E.2d 589), such motions are encouraged in criminal cases to exclude collateral or extraneous matters. *People v. Clark* (1984), 129 Ill. App. 3d 374, 377, 472 N.E.2d 814.

■■ Here, the trial court did not abuse its discretion in granting the State's motion. The defense theories proposed by defendant were problematic in two respects. First, defendant never made any offer of proof, even after the State requested it in its discovery motion, to support its theory of defendant's insanity due to drug addiction. Drug addiction alone will not support an insanity defense unless there is a mental disease or defect traceable to the habitual or chronic use of drugs. (*People v. Free* (1983), 94 Ill. 2d 378, 408, 447 N.E.2d 218.) Such habitual use must result in a permanent type of insanity. (94 Ill. 2d 378, 408, 447 N.E.2d 218.) Defendant suggested only that he would offer proof of his addiction but not of any resultant permanent insanity. The trial court, in responding to the State's concern over the unnecessary introduction of defendant's drug use at trial, properly granted the motion to the extent of defendant's proposed insanity defense. Defendant was not barred from presenting an insanity defense at trial based upon a permanent-type insanity due to his chronic use of drugs.

■■ The court also properly excluded defendant's proposed defense of involuntary intoxication based on his drug addiction. Section 6—3, in pertinent part, states:

"A person who is in an intoxicated or drugged condition is criminally responsible for conduct unless such condition either:
\*\*\*

(b) Is involuntarily produced and deprives him of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Ill. Rev. Stat. 1985, ch. 38, par. 6—3.

Section 6—3(b) is available only if the defendant can show involuntary intoxication resulting from some outside influence such as trick, artifice, or force. (*People v. Larry* (1986), 144 Ill. App. 3d 669, 677, 494 N.E.2d 1212.) The term "involuntarily produced" in the context of section 6—3(b) has been interpreted to refer to the mechanical act of ingesting the drug, not to the willing and intelligent assumption of the possible harmful consequences of taking the drug. (*People v. Larry* (1986), 144 Ill. App. 3d 669, 677, 494 N.E.2d 1212; see also *People v. Gerrior* (1987), 155 Ill. App. 3d 949, 952-53, 508 N.E.2d 1119.) Nor is chronic alcoholism alone the basis for a defense of involuntary intoxication. (*People v. Quinn* (1977), 46 Ill. App. 3d 579, 583, 360 N.E.2d 1221.) Thus, defendant's contention that his cocaine addiction was involuntarily produced because he was unaware of the addictive effects of cocaine is not the type of involuntary consumption to avail him of a legally viable defense under 6—3(b) based on his purported drug addiction alone.

Defendant relies on *People v. Brumfield* (1979), 72 Ill. App. 3d 107, 390 N.E.2d 589, to support his position that he was denied the opportunity to present a defense of involuntary intoxication or drugged condition by the granting of the pretrial motion *in limine*. *Brumfield* is, however, distinguishable from the case at bar. In *Brumfield* the State sought to prohibit defendant's raising of an involuntary intoxication defense by filing a motion *in limine*. (72 Ill. App. 3d 107, 110, 390 N.E.2d 589.) The State's premise was that voluntary or involuntary intoxication was not a valid defense to rape. (72 Ill. App. 3d 107, 110, 390 N.E.2d 589.) The defendant responded that involuntary intoxication was a defense to rape and offered proof that he had unknowingly ingested "angel dust" while smoking marijuana. (*People v. Brumfield* (1979), 72 Ill. App. 3d 107, 110-11, 390 N.E.2d 589.) The trial court allowed the motion, noting that it was "the feeling of the court that either voluntary or involuntary use of drugs is not a defense of the crime of rape." *People v. Brumfield* (1979), 72 Ill. App. 3d 107, 111, 390 N.E.2d 589.

On appeal, the State conceded that involuntary intoxication is a defense, but argued that defendant's offer of proof was insufficient to

establish the defense. (72 Ill. App. 3d 107, 111, 390 N.E.2d 589.) The court, in reversing the trial court, stated that "[o]nce the defendant asserted a *legally viable defense* in response to the State's discovery motion, the State and the trial court were without authority to question the propriety of that defense prior to trial." (Emphasis added.) (*People v. Brumfield* (1979), 72 Ill. App. 3d 107, 112, 390 N.E.2d 589.) The court went on to note that defendant's offer of proof does not govern the efficacy of the defense (72 Ill. App. 3d 107, 112, 390 N.E.2d 589), and the trial court's prohibiting defendant from presenting evidence on an *available* defense raises serious constitutional questions. *People v. Brumfield* (1979), 72 Ill. App. 3d 107, 113, 390 N.E.2d 589.

Thus, in *Brumfield,* the court relied on the viability and availability of the purported defense, not the sufficiency of defendant's proof prior to trial. Here, the trial court ruled that there was no valid defense of involuntary intoxication or drugged condition based on drug addiction alone. Unlike in *Brumfield* where the court ruled that involuntary intoxication is not a defense to rape, here the court ruled that no legally viable defense of involuntary intoxication exists, as a matter of law, where the involuntary intoxication is based only on defendant's drug addiction. The trial court specifically ruled that defendant could offer evidence at trial of involuntary use other than his addiction. For the foregoing reasons, the trial court did not err in the granting of the motion *in limine.*

■■ ■ The next issue raised on appeal is whether the trial court erred in denying defendant's motion to suppress statements. In this regard, defendant contends that his refusal to sign the rights waiver form, combined with Officer Milot's testimony that defendant did not wish to talk with the officers regarding the armed robberies, was the invocation of his right to remain silent. Thus, his statements to the officers, following his meeting with Lt. Hansen, without a new admonition and waiver of his *Miranda* rights, should be suppressed.

The trial court must initially determine whether a defendant has been properly admonished of his fifth amendment rights and whether he knowingly, intelligently and voluntarily waived these rights. (*People v. Martin* (1984), 102 Ill. 2d 412, 426, 466 N.E.2d 228.) Its findings will not be disturbed unless they are against the manifest weight of the evidence. (102 Ill. 2d 412, 426, 466 N.E.2d 228; *People v. Dalton* (1982), 91 Ill. 2d 22, 31, 434 N.E.2d 1127.) At a hearing on a motion to suppress, it is the function of the trial court to resolve conflicts in the testimony and to determine the credibility of the witnesses. *People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280.

The trial court here specifically found the officers' testimony to be credible and defendant's testimony not credible. Further, the court found that defendant did not invoke his right to silence when he initially did not talk with the officers about the armed robberies, but inquired whether they could make a deal with him.

It is clear from a reading of the record that the officers' testimony was that defendant was given the *Miranda* warnings and understood them. When the officers proceeded to question defendant on each of the 10 armed robberies, defendant did not talk about them and inquired whether a deal could be made. He then asked to speak to Lt. Hansen, whom he had known for some time. Following the conversation with Lt. Hansen, he then gave statements on the separate armed robberies.

■■■ We do not find that defendant's initial unwillingness to talk about the armed robberies and his inquiries about whether a deal could be made was an invocation of his desire to remain silent and that the interrogation cease. (See *People v. Cooney* (1985), 136 Ill. App. 3d 989, 997, 484 N.E.2d 802; *People v. Walker* (1971), 2 Ill. App. 3d 1026, 1033, 279 N.E.2d 23.) Nor is defendant's refusal to sign the rights waiver sufficient by itself to establish the fact that he wished to stop the interrogation. See *People v. Starnes* (1972), 8 Ill. App. 3d 709, 713, 289 N.E.2d 264.

■■ ■ Defendant next contends that, in the Bozini Pharmacy armed robbery case, the trial court erred in giving an instruction to the jury, Illinois Pattern Jury Instructions, Criminal, No. 3.14 (2d ed. 1981), where the word "design" was inserted in the bracketed alternatives in that instruction. He contends that as the evidence of a prior crime in the instant case was admissible to show *modus operandi*, the use of the word "design" in the instruction was error. No contention is made that proof of other crimes was improper or that the mere giving of IPI Criminal 2d No. 3.14 was itself error.

The record does not show that defendant made any objection to the form of this instruction at the conference on instructions, and the issue was not raised in defendant's written post-trial motion for a new trial. Issues not properly raised in a post-trial motion are considered waived. (*People v. Wright* (1985), 111 Ill. 2d 128, 154-55, 490 N.E.2d 640.) While the waiver doctrine is not absolute and Supreme Court Rule 451(c) (107 Ill. 2d R. 451(c)) sets forth a limited exception to the waiver rule which allows review of "substantial defects" in instructions "if the interests of justice require" (*People v. Berry* (1984), 99 Ill. 2d 499, 503-04, 460 N.E.2d 742), defendant has not argued, even after the State pointed out this waiver in its brief, review under

this rule. Nevertheless, this exception to the waiver rule is restricted to the correction of grave errors or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Huckstead* (1982), 91 Ill. 2d 536, 544, 440 N.E.2d 1248.

 Notwithstanding defendant's reliance on *People v. Richards* (1978), 64 Ill. App. 3d 472, 381 N.E.2d 307, a case which is inapposite factually from the case at bar, under the circumstances of this case, the purported error was neither grave nor was the case close factually such that fundamental fairness requires the jury be properly instructed.

 Defendant's final contention is that his sentences were an abuse of discretion where the trial judge erroneously found there were no mitigating factors. Specifically, defendant claims that his drug addiction and that he did not contemplate that his conduct would not cause serious harm to others were mitigating factors. He argues that because the trial judge stated during the sentencing proceeding that "I really can't see any mitigating factors," the court erred and he should have his sentence reduced or, alternatively, be entitled to a remandment for a new sentencing hearing.

While drug addiction is not one of the factors in mitigation contained in section 5—5—3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1), several cases have held that drug addiction or alcoholism in the light of the particular facts of the case may be mitigating factors to be considered in sentencing. (See *People v. Treadway* (1985), 138 Ill. App. 3d 899, 904-05, 486 N.E.2d 929; *People v. Goodman* (1981), 98 Ill. App. 3d 743, 749-51, 424 N.E.2d 663.) We do not conclude, however, that the trial judge's comment in the context in which it was made here meant that he did not consider defendant's drug addiction.

 Rather, it is clear from the judge's earlier comments that he was well aware of defendant's drug addiction claim and, during the course of the trial, stated that this was a mitigating circumstance at sentencing rather than evidence at trial. Thus, his remark that "I really can't see any mitigating factors," in proper context, intended to refer to the weight he accorded it, rather than no consideration of it. See *People v. Bartay* (1986), 150 Ill. App. 3d 130, 133, 501 N.E.2d 364.

 Defendant also contends that the trial court did not consider that defendant did not contemplate that his conduct would cause or threaten serious physical harm. Defendant correctly points out that evidence that a defendant did not contemplate his criminal conduct

would cause or threaten serious physical harm shall be considered and accorded weight in mitigation. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.1(a)(2).) In support of his argument, defendant points to the court's comment at the sentencing hearing directed to defendant, "[y]ou didn't want to hurt anybody." Defendant argues that the court recognized defendant's disinclination to harm anyone yet refused to consider that as a mitigating factor when it said, "I really can't see any mitigating factors."

An examination of the context from which the remarks are taken indicates that the trial judge did in fact consider whether defendant had contemplated that he would threaten serious physical harm during the course of the robberies. The court stated:

"I grant you that most of the armed robberies that we had in aggravation as well as the two that you were tried for, one person was injured. He had his finger cut. None of the others were; and I as I understand it, your idea was that you would simply scare them into it, into not doing anything. You didn't want to hurt anybody. Yet, at the same time, when we look at armed robbery, it isn't just the fact that somebody is killed or injured in the performance of it, but what could have happened if somebody tried to prevent it; and if somebody had tried to prevent your escape at the time, had come in at the moment that you were leaving and you wanted to get out of there, that knife could have been used very efficiently and deadly against that person. There could have been death in the matter."

It is apparent from this language that the court did consider whether defendant's conduct fit within section 5—5—3.1(a)(2) and concluded that it did not. We find no error. As the record does not support defendant's contentions of sentencing error, we conclude from an examination of the record that the trial court did not abuse its discretion in sentencing defendant to consecutive 30-year terms for the armed robberies.

Affirmed.

UNVERZAGT and DUNN, JJ., concur.