(No. 31353.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LUPE SILVA, Plaintiff in Error.

*Opinion filed January 18, 1950.*

Frank A. McDonnell, of Chicago, (William L. Carlin, and Louis A. Rosenthal, of counsel,) for plaintiff in error.

Ivan A. Elliott, Attorney General, of Springfield, and John S. Boyle, State's Attorney, of Chicago, (John T. Gallagher, and Rudolph L. Janega, both of Chicago, of counsel,) for the People.

Mr. Chief Justice Thompson delivered the opinion of the court:

Plaintiff in error, Lupe Silva, was indicted and tried in the criminal court of Cook County for the crime of forcible rape. He entered a plea of not guilty and was tried before the court after a jury trial had been waived. He was found guilty as charged in the indictment and sentenced to the penitentiary for a term of ten years. Motion for a new trial was overruled and plaintiff in error was sentenced accordingly.

It is contended the judgment is against the manifest weight of the evidence, and he urges the testimony of the prosecutrix is not corroborated and that she made no outcry.

The facts out of which this case arose are as follows:

On the morning of October 10, 1948, around 5:00 o'clock A.M., the prosecutrix, aged 19 years, left her home at 1121 South Newberry Street, Chicago, to go to the Maxwell Street Police Station, a few blocks away, to complain of a disturbance in her home brought about by her brother. After making the complaint around 5:20 A.M., she walked west from the police station about three blocks to a hamburger stand on Halsted Street, where she purchased some sandwiches, one of which she carried out to take home. She then walked west on Maxwell Street to South Peoria Street. In doing so she crossed South Newberry Street,

on which her home was located. She turned north and walked on the east side of South Peoria Street toward West Roosevelt Road. Defendant's home is located on the same side and in the same block of South Peoria Street. Prosecutrix testified that as she approached West Roosevelt Road, a man whom she did not know, but who is now identified as the defendant, accosted her and, when she walked away, struck her on the back of the head, grabbed her and dragged her into the alley where the act of forcible rape was committed; that she did, not resist or cry out because of the effect of the blow and because defendant threatened to kill her if she made an outcry. She testified that after the assault the defendant forced her to accompany him through the alley for about half a block to his home at 1313 South Peoria Street, where she was taken to a gangway entrance and up a flight of stairs to the defendant's living quarters; that just before they entered the apartment the defendant threatened to kill her if she complained to anyone inside.

Prosecutrix testified that when they entered the door into the kitchen they found an older man making coffee who said nothing at the time; that she remained in the kitchen for a short time and then went into the washroom; that seeing a window on the gangway, she went back to the kitchen, asked the older man for soap to wash her hands, went back into the washroom, turned on the water and climbed out through the window and dropped to the gangway below. Being injured by the fall, she crawled toward the street and called to a person passing by, who picked her up and carried her to a hallway a few doors from the gangway. The record discloses she made no explanation at the time but asked the man to call the police. She then crawled up the stairs to a door on which she knocked. Lying on the floor of the hallway she asked one Pizana, who responded to her knock, to call the police, which he did. Other members of the family came and, in

response to their inquiries, she stated she had been kidnaped by one Kennedy, by which name the defendant is known. A short time thereafter the police arrived and she told them she had been raped. The police took her to the county hospital where she was admitted and examined. She did not complain of rape to the doctor at the hospital and his testimony contains no reference that there was evidence of such crime having been committed. The police arrested defendant in a house at 1110 South Newberry Street about 6:45 A.M. He was drunk at the time. A statement was taken from him on the night of October 11, in which he denied the rape and alleged that he knew the prosecutrix prior to the charge and had previously engaged in sexual intercourse with her; that on the morning in question she came to his house around 4:30 or 5:00 A.M.; that he let her in and she told him she had had trouble with her brother, was unhappy and requested him to marry her; that they had sexual intercourse in his bed and on his refusal to promise marriage she threatened suicide; that thereafter she went to the washroom and that was the last he saw of her.

On the trial the defendant told substantially the same story except that he said she came to his house about 6:00 A.M.; that after having sexual relations prosecutrix went to the washroom and a few minutes later, a roomer, one Rosy Rodriquez, went to the washroom door, found it locked, and getting no response from the inside, called attention to it; that he and his stepfather, who was the man making coffee in the kitchen, broke in and found the washroom unoccupied; that they looked below the window and saw nobody, and that he did not know what had happened until after his arrest; that the occupants of the apartment were awake and that he and his sister, together with her boy friend, were preparing for a trip to Indiana, and that he went to the house where he was arrested to pick up one Rubio, who was going with them.

Defendant's testimony, in substance, is supported by that of his stepfather, his sister, his mother and Mrs. Rodriquez, the roomer, except that they gave no evidence tending to support his claim that he had sexual relations with the prosecutrix.

It is undisputed that while she was in the apartment prosecutrix made no complaint and there was no violence or physical restraint. Defendant's mother and sister testified that prosecutrix came to their house to see defendant repeatedly before; that she was well known to them, having lived in the same neighborhood for many years.

It is defendant's contention that the evidence is insufficient to support the conviction, first, because the evidence of prosecutrix is uncorroborated. He relies on *People* v. *Glasser,* 335 Ill. 263, where the court held that on a charge of rape, where denied, the evidence of the prosecutrix must be corroborated by other evidence, facts or circumstances in the case. Other cases cited by defendant restated that rule. In the case of *People* v. *Kazmierczyk,* 357 Ill. 592, the testimony of the prosecutrix on a charge of rape was uncorroborated and was contradicted by other witnesses. In reversing that case this court held that while in exceptional cases, where no other evidence is available and the fact that rape has been committed is established by clear and convincing proof, the testimony of the prosecutrix alone may be sufficient to justify conviction, yet where her testimony lacks corroboration and is discredited by other witnesses present and in a position to know and speak the truth, and where defendant denies the charge, a conviction cannot stand.

The People rely on *People* v. *Sciales,* 345 Ill. 118, with other cases, in urging the rule that where the testimony of the prosecutrix is clear and convincing, it is sufficient even though uncorroborated. (*People* v. *DeFrates,* 395 Ill. 439; *People* v. *Vaughn,* 390 Ill. 360.) The facts in those cases are at variance with the facts as disclosed by the record

in the instant case. In the *Sciales* and *DeFrates cases* there was no dispute over the circumstances surrounding the offenses alleged and the sole question was whether the offense had occurred. No inconsistencies existed in the statements made and the admitted circumstances tended to reinforce the testimony. No witness in either case contradicted the prosecutrix except as to the fact of rape. In the *Vaughn case* the testimony of the prosecutrix was equally clear and consistent and the sole defense was an uncorroborated alibi. There, also, the undisputed circumstances tended to support the truth of the charge. Here, there is not only a denial of the charge but the testimony of the defendant and four other witnesses that, at the time defendant is alleged to have committed the offense in the alley, he was in his apartment. There was evidence that the prosecutrix had previously made a practice of coming to see defendant in his living quarters; that on the morning and during the time in question she came, alone and of her own will, to the apartment. Defendant's statement, given to the police on the day following, recounted that she told him of her trouble with her brother. Discussion of such a subject seems unusual to have occurred in the course of events as related by the prosecutrix. There is nothing in the record to show how defendant knew of her difficulty with her brother unless prosecutrix told him at or during the time of the alleged occurrence. Her statement that she was on her way home from the hamburger stand seems inconsistent in view of the fact that the route she followed was the route to defendant's home and she must have passed the street on which she lived in order to get to South Peoria, where defendant lived and where she alleged the attack took place.

Defendant contends that there was no outcry by the prosecutrix nor any complaint made until the police arrived in the hallway to which she had been carried. The record discloses she made no complaint during the time she was

in defendant's home and she told persons at the home where she was carried after her fall that she had been kidnaped. In any event the complaint was not made of an attack until several hours after it was alleged to have occurred, the prosecutrix having had an opportunity to complain to a number of persons. The People contend that the threats of defendant and the absence of any reason to believe anyone in defendant's home would help her, would excuse her failure to make complaint, and that after the fall her physical condition made her interested only in police protection and medical aid. It is true that the law does not require outcry where it is useless or where the prosecutrix is restrained by fear of violence, but the evidence here does not disclose that the occupants of defendant's home were hostile and in any way restrained the prosecutrix from making complaint. Other statements made during this time by the prosecutrix lessen the value of her testimony.

The sole and controlling question in this case is whether defendant has been proved guilty beyond a reasonable doubt. The evidence in the record supporting the charge consists solely of the uncorroborated testimony of the prosecutrix. Her version of the events in question contains her unexplained presence on the street where defendant lived and near his home at a time when she said she was on the way to her home, to reach which would require her normally to follow a different route. The circumstances pertaining to her outcry also leave that question in considerable doubt. She testified her clothes were torn, but they were not introduced in evidence. Her fall from the window is not shown to have been caused by any immediate threat of harm to herself. Such testimony is not of that clear and convincing character required to support the conviction under the rule in the case of *People* v. *De Frates,* 395 Ill. 439. Opposed is the absolute uncontradicted evidence of defendant and four other witnesses who were unimpeached on their assertion that the defendant was in the apartment at the time

the alleged offense is said to have occurred, and that the prosecutrix came there, alone and of her own will, to see defendant as she had done previously.

From the record here the evidence on which the judgment of conviction is based is of such an unsatisfactory character that we are of the opinion the judgment should be reversed and the cause remanded for a new trial.

*Reversed and remanded.*