(No. 35971.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES WILLIAMS, Plaintiff in Error.

*Opinion filed November 30, 1961.*

PHILLIP H. HOLM, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and DEAN H. BILTON, Assistant State's Attorneys, of counsel,) for the People.

* Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

The criminal court of Cook County in a trial without a jury found defendant James Williams guilty of the crimes of rape and robbery, and sentenced him to terms of five years for the rape, and three to fifteen years for the robbery. On writ of error defendant has urged this court to reverse that judgment on the ground that the evidence fails to support the finding of guilty on either of the charges, which were tried together with his consent.

In reviewing the evidence we find that on August 28, 1957, at 12:30 A.M. the prosecuting witness, Mrs. Dolores Williams, and her sister, Mrs. Elizabeth King, were walking along 61st Street between Halsted and Peoria Streets in the heart of the Englewood shopping district on Chicago's south side, apparently enroute home from a movie. There

---

* This opinion was prepared by the late Mr. CHIEF JUSTICE BRISTOW, and was adopted and filed as the opinion of the court.

is a restaurant and drug store on the corners, and there are numerous taverns and liquor stores in the area. Defendant had been drinking in one of the taverns with a friend, and was on his way home alone when he saw the two women walking along the street.

According to the testimony of the prosecutrix, defendant came up from behind them, put his arm around her neck, and said, pressing something metal against her, "Don't holler and it won't go off." Defendant, however, claims he merely walked between them, and that it was his bracelet that she must have felt. It was undisputed that he had no gun, and that there was no further reference to any weapon. The trio walked together arm in arm down the populated 61st Street, and then turned north on Peoria Street in the direction of prosecutrix's home near 60th Street. Defendant asked them where they lived, and when the prosecutrix indicated, "right down the street," defendant suggested they walk in the opposite direction. After proceeding half a block, the sister pleaded that she was ill and nervous, and defendant released her, promising that he wouldn't do anything to harm the prosecutrix.

Defendant and prosecutrix continued walking and talking together down Peoria Street. Prosecutrix testified that she held his arm, and that he kept his other hand in his pocket. In the middle of the block they entered an alleyway, and defendant asked to kiss her. She agreed and permitted him to take certain liberties with her person. They had some conversation about whether defendant could trust her, and whether she would call the police if he let her go home. She told him several times that she would not, and that she was not afraid of him. He said he'd like to see her again and asked for her phone number. As she wrote the correct number on a paper with lipstick, since she had no writing implement, he saw her wrist watch and asked if her husband would miss it. She replied that she bought it herself. She

took the watch off and gave it to defendant at his request, with the understanding that she would get it back when she met him after he telephoned in a few days.

They talked further about whether defendant could trust her. She asked him whether there was anything she could do to show him that he could trust her. Prosecutrix claims, and defendant denies, that he told her to suggest something. She asked him if he wanted her body, but he refused. Defendant testified that he also refused her offer of money; however, prosecutrix stated that this refusal of money was made at another point. Prosecutrix offered her body a second time, and defendant asked her why she did that, and if she wanted him to think that she always did that or just wanted to do it. She replied that she wanted to show him that he could trust her. Defendant then said he would take her body. He removed his shirt and placed it on the ground for her to lie on. She removed her underclothes and they had sexual intercourse.

Thereafter the prosecutrix got up, dressed herself, and asked defendant to walk her home, because someone might stop her again. He agreed to do so. They walked along Halsted to 61st Street, and the prosecutrix gave defendant a quarter for carfare. According to the defendant, there was an understanding that he would call to arrange to meet the prosecutrix in a few days and return her watch. He told her, "We'll go out and have a couple of beers and forget the whole thing." He also claimed he apologized as his head began to clear. The prosecutrix, however, testified that she had no intention of meeting him again to get back the $50 watch, and that she was going to call the police. In an out-of-court statement, however, she admitted that she didn't know what she was going to do. As they were walking arm in arm, a police car drove up and an officer jumped out and seized defendant.

From the officer's testimony, defendant was apprehended as he was walking arm in arm with the prosecutrix

at 1:40 A.M., in the vicinity of 61st and Halsted streets. The police officer found a butcher knife on defendant, which he testified he used in connection with his work of opening packing cases. At no time did defendant show the knife to the women, or even refer to it as being on his person.

At the station the police searched defendant and found the watch in the sweatband of his hat. Defendant denied that he tried to hide it, and claimed he put his cap on the seat and then placed the watch in it. His statement at the State's Attorney's office the following morning was substantially the same as his testimony, with the exception of some discrepancies in trying to conceal where he lived and worked. On defendant's return to the lockup, he made an aborted attempt to escape, which he explained was done because he thought the officer would probably fire, and at that time he wanted to be killed rather than face the disgrace.

On the basis of substantially the foregoing evidence the judge, after denying motions for directed verdicts on both charges, found defendant guilty of both rape and robbery, and sentenced him to a term of five years of hard labor for the rape, and to a term of from three to fifteen years for the robbery.

Considering first the crime of rape, the cases reiterate that to sustain a conviction the act must be against the will of the victim. (*People* v. *Scott*, 407 Ill. 301.) However, as stated by the prosecution, there need be no showing of physical force if the prosecuting witness was paralyzed by fear or overcome by the superior strength of her attacker. (*People* v. *Ardelean*, 368 Ill. 274.) Inasmuch as the law does not require a useless act, if the superiority of strength of the defendant was so great that effectual resistance might be impossible, there need be no showing of any struggle; similarly, if defendant and the victim are so remote from human help that an outcry might be unavailing, there need be no outcry. *People* v. *Silva*, 405 Ill. 158; *Austine* v. *People*, 110 Ill. 248.

From our review of the evidence in the instant case, it is undisputed that the prosecutrix at no time made any outcry or attempt to escape or resisted in any way, even though they were walking along a populated commercial area with open stores on a summer night. Although she claims that defendant kept his hand in his pocket, thereby suggesting a weapon, it is not entirely clear to this court how this was done in the light of the intimacies. Moreover, it is undisputed that no weapon of any kind was brandished before the prosecutrix and that defendant did not force her by his own physical strength to do anything. According to her own admission, defendant did not force his kisses or affections upon her when they were in the alley. It was she who permitted the liberties and offered her body, apparently to convince him that she could be trusted. In our opinion her entire conduct in suggesting the act herself, in removing her own underclothes and voluntarily lying down on his shirt, which he placed on the ground for her convenience, and then in seeking defendant's protection by asking him to walk her home, and offering him carfare, is hardly consistent with any paralyzing fear, or with being overcome by superior strength so as to excuse the prosecutrix's failure to resist. This is further corroborated by her out-of-court statement that she "didn't know" whether she would have called the police if they hadn't driven up.

Under these circumstances, the evidence, in our judgment, failed to establish that the act was against the will of the victim, and it was therefore error to find defendant guilty of rape. Furthermore, no useful analogies can be made to the cases cited either by the prosecution or the defense. Prosecutrix's situation is hardly comparable to that of the nine-year-old child dragged by the adult male into the basement, in the *Ardelean* case cited by the prosecution. (368 Ill. 274.) Nor is prosecutrix's conduct as willing or as indifferent to the rape as that of the complaining witnesses in *People* v. *Scott,* 407 Ill. 301, *People* v. *Silva* 405

Ill. 158, and *People* v. *Buchholz*, 363 Ill. 270, cited by defendant.

With respect to defendant's conviction of robbery, that crime is defined in our statute as the felonious and violent taking of money or property from the person of another by force and intimidation. (Ill. Rev. Stat. 1957, chap. 38, par. .501.) The gist of that offense is the force and intimidation used in the taking from the person against his will (*People* v. *Cassidy*, 394 Ill. 245) ; and the degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will. (*Hall* v. *People*, 171 Ill. 540; *People* v. *Ryan*, 239 Ill. 410; *Steward* v. *People*, 224 Ill. 434.) However, if neither force nor intimidation is present, robbery is not proved. (*People* v. *Jones*, 290 Ill. 603; *People* v. *Goldberg*, 302 Ill. 559.) Thus, if property is taken from the person without violence or intimidation and without any struggle for its possession, the crime is "larceny from the person." (*People* v. *Ryan*, 239 Ill. 410; *People* v. *Campbell*, 234 Ill. 391; Ill. Rev. Stat. 1957, chap. 38, par. 387.) Where it is doubtful under the facts whether the accused is guilty of robbery or larceny from the person, it is the duty of the court and the jury to resolve that doubt in favor of the lesser offense. *Hall* v. *People*, 171 Ill. 540.

In the case at bar the evidence shows that defendant at no time made any demands for money from the prosecutrix, and he even refused her offer of money on two occasions. The only item he took was her watch, and that was done partly in an effort to induce her to meet him again, for it was understood that he would give it back at their next meeting. Moreover, the prosecutrix readily gave it to him when he asked whether her husband would miss it, stating that she had purchased it, and that it was hers.

Under these circumstances, while defendant's intention to restore the property would not do away with the criminal

nature of the transaction (*People* v. *Nevin,* 343 Ill. 597,) nevertheless, there was no force or violence used to wrest the property from the prosecuting witness. If she was intimidated by fear, it was not predicated on threats of bodily harm if she failed to turn over the watch. Furthermore, the fact that she sought defendant's protection to see her home safely certainly militated against any inference that she was in fear of him.

The evidence falls short of the concept of intimidation set forth in *Steward* v. *People,* 224 Ill. 434, cited by the prosecution, where the court stated: "The fear 'must be of a nature as in reason and common experience is likely to induce a person to part with his property against his will, and put him, as it were, under the temporary suspension of the power of exercising his will through the influence of the terror impressed.' "

Nor do we find *People* v. *Goldberg,* 302 Ill. 559, cited by defendant, determinative. While that case correctly states the rule that consent by the person whose property is taken precludes the crime of robbery, the issue in that case was not whether the prosecuting witness was intimidated, as in the case at bar, but rather whether he was a collaborator in the crime.

On the basis of this analysis we find that the charges of rape and robbery were not proved beyond a reasonable doubt, and the judgment of the trial court was in error and is reversed.

*Judgment reversed.*