THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL J. HAY, Defendant-Appellant.

Second District    No. 2—04—0212

Opinion filed December 7, 2005.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and James K. Leven, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Stephen E. Norris, Kendra S. Peterson, and Deirdre A. Hosler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

Following a bench trial, the defendant, Michael J. Hay, was convicted of robbery (720 ILCS 5/18—1 (West 2002)) and sentenced to

10 years' imprisonment. The defendant appeals, arguing that (1) he was not convicted beyond a reasonable doubt; (2) the trial court failed to admonish him pursuant to Supreme Court Rule 605(a) (188 Ill. 2d R. 605(a)); and (3) the trial court erred in imposing an extended sentence. We affirm.

## BACKGROUND

On September 2, 2002, the defendant was charged by indictment with robbery. The indictment alleged that on August 16, 2002, the defendant knowingly took two rings from the presence of Janet Tsang, by the use of force. The trial court conducted a trial on August 20, 2003. The following evidence was admitted at the trial.

Janet Tsang testified that she was a 21-year-old student and had worked part-time at Lenna's Jewelers in Hinsdale for the past four years. In 2002, the security latch on the store's front door did not always catch and people would on occasion be able to enter without being buzzed in. However, if the door closed hard enough, the latch would catch and people would have to be buzzed both in and out. There was a video camera that pointed toward the front of the store.

On August 16, 2002, Tsang worked at the jewelry store from 9 a.m. to 5 p.m. Lynn Loeffler, another employee, was also working. Tsang identified a videotape that portrayed events that took place in the store on August 16, 2002, between 10 a.m. and 10:30 a.m. The State played the video as Tsang described what had happened.

At 10:22, a white male came into the store. No one had buzzed him in. The man indicated to Tsang that he was looking for an engagement ring. Tsang asked the man if he had something specific in mind in regard to cut, clarity, or color, and the man said that he did not. Tsang then pulled out a ring with a stone about a carat in size. Tsang explained to the man that the stone was cubic zirconia. The man seemed disinterested. Loeffler was working in the back at this time.

Tsang then picked up a ring with a one-carat diamond. The ring was on a ring stand. The man asked to see something "bigger," so Tsang pulled out another ring to show the man. At this point, the ring on the stand was in her left hand and the other ring was in her right hand. Loeffler had then come to the front of the store and stood behind the cash register, which was about 15 to 20 feet away from Tsang and the man.

The man grabbed the two rings from Tsang. After he grabbed the rings, the man tried to exit the front door. The man yanked on the door, but the door was locked. Loeffler tried to tackle the man and told Tsang to call 911. Tsang called the police as the man ran out the back door of the store. Loeffler went out the back door after the man and chased him down the street.

Tsang described the man as 5 feet 7 inches or 5 feet 8 inches tall and having an average build. Tsang estimated that the man was in his mid to late 20s. The man was wearing a gray shirt and baggy pants. Tsang was three to four feet from the offender and looked directly at him. Tsang had an unobstructed view of his facial features. The police had Tsang view a six-man photo lineup. However, she was unable to identify the offender.

Lynn Loeffler testified that in August 2002, she worked for Lenna's Jewelers. Loeffler was the jeweler. She repaired jewelry, set stones, and designed rings. On August 16, 2002, she arrived at the jewelry store around 8:45 a.m. Between 10 a.m. and 10:30 a.m., the owner of the store, Lynn Freidman, went to the bank. During that time, a man entered the store. The man began speaking to Tsang.

The man asked to see a "big stone" and Tsang pulled out a ring with a one-carat diamond. The man then asked to see something "bigger." At this point, Loeffler got up and stood behind the cash register because she did not like the sound of the conversation. Loeffler explained that it was the way that the man asked to see something big. Usually, a customer had in mind a certain size, clarity, and color. When Loeffler was behind the register, she was about eight feet from Tsang and the man.

Loeffler started to walk toward the front of the store when Tsang pulled out the second ring, because Loeffler was nervous about having two rings out near the front. As Loeffler reached the front, the man grabbed the two rings out of Tsang's hands and tried to get out the front door. Loeffler told Tsang to call 911 and tried to stop the man. Loeffler pushed the man against the front door and tried to hold him there. The man stated, "Let me go or I will hurt you." The man pushed Loeffler out of the way and then ran to the back of the store.

The man attempted to go through a door on the right side of the store, but turned around after he saw that it was not a way out. The man then jumped over a display case and went through a door at the back of the store that leads to a storage room. Loeffler slammed the man's foot in the door. The man again stated, "Let me go or I will hurt you." The man eventually got his leg free and ran to another door in the storage room that leads outside. The man unlocked this door, opened it, and ran outside into the alley behind the store.

Loeffler ran after the man. Loeffler lost sight of him when he reached Garfield Street, which is at the end of the alley. When Loeffler reached Garfield, she saw a car speed away in a southerly direction. The car's engine raced and the tires squealed. Loeffler tried to memorize the license plate number of the car, but all she could remember was that the number began with 424 or 242.

Loeffler described the offender as white, 5 feet 7 inches tall, and having a medium build. He had dark-colored hair worn in a buzz-cut style and was clean-shaven. The police had Loeffler view a six-man photo lineup. Loeffler recognized the man in picture number five to be the offender. The photo lineup was admitted into evidence as People's exhibit number 2. The police had Loeffler view photographs of a car. The car in the photos, an early 1990s model black Cadillac STS with a plate number beginning with 342, looked like the car that she saw speed away from the scene of the incident. The photos of the car were admitted into evidence as People's exhibits numbers 3, 4, and 5.

Detective Frank Homolka of the Hinsdale police department testified that he investigated the incident that occurred at Lenna's Jewelers on August 16, 2002. During the course of his investigation, Detective Homolka received information indicating that the defendant was a possible suspect in the case. Detective Homolka then obtained a picture of the defendant from the Illinois Department of Corrections website. Detective Homolka took the picture to Detective John Bright of the Westmont police department and asked him to create a six-man photo lineup including the picture. Detective Homolka made arrangements with Loeffler to view the lineup. Within 5 to 10 seconds, Loeffler pointed to the defendant's picture and stated, "This is the guy right here, number five."

In the course of his investigation, Detective Homolka met with the defendant's father. The defendant's father worked at a pawnshop below where the defendant resided. Detective Homolka had hoped to recover the stolen rings. The defendant's father drove a 1993 black Cadillac STS to the meeting with Detective Homolka. Detective Homolka took pictures of the defendant's father's vehicle and showed them to Loeffler.

Lynn Freidman testified that she is the owner of Lenna's Jewelers. Friedman testified that the defendant did not have permission to take the rings from the store. Friedman made an insurance claim regarding the stolen rings. The insurance company paid Friedman $9,100 on the claim. Friedman was responsible for a $5,000 deductible. Friedman estimated that the retail value of the rings was $30,000.

The parties stipulated to the following other-crimes evidence. Wanda Wilson would testify that she worked at Celine's Fine Jewelry in Long Grove. On June 12, 2001, the defendant entered Celine's and Wilson showed him a number of engagement rings. Ultimately, Wilson showed the defendant a one-carat diamond set in an 18-karat white gold band. Once the ring was in his hand, the defendant fled the store. The defendant was convicted of theft and sentenced to three years' imprisonment.

Sarah Sullivan would testify that she was an employee of Zastrow Jewelers in Hinsdale. On June 14, 2001, Sullivan showed the defendant an engagement ring and a heart-shaped loose diamond. The defendant grabbed the jewelry and fled the store. The defendant was convicted of theft and sentenced to three years' imprisonment. The defendant was released on parole on July 5, 2002, about a month prior to the instant offense.

David Allen Kantowski testified on behalf of the defendant that he was a real estate broker with Remax Realtors. On August 16, 2002, the date of the instant offense, Kantowski had an appointment to meet with the defendant's father at a building located at 5721 Archer Avenue in Chicago. A couple minutes after 10 a.m., the defendant showed up instead. Prior to that date, Kantowski had never met the defendant. On cross-examination, Kantowski admitted that his brother-in-law was Sam Volpendesto. Volpendesto owned the pawnshop where the defendant's father worked.

The defendant testified that prior to 9:30 a.m. on August 16, 2002, he awoke in his apartment above the pawnshop at 5721 Archer Avenue. At 8:45 a.m. the defendant's father had informed him that a realtor from Remax, David Kantowski, would be coming by the building for an appointment. Shortly after 10 a.m., the defendant spotted a man in a Remax shirt and assumed he was Kantowski. The defendant showed Kantowski around the building. The defendant denied being in Hinsdale between 9:30 a.m. and 11 a.m. on August 16, 2002. The defendant viewed the videotape of the alleged robbery and denied that he was the offender.

The defendant acknowledged that he had been previously convicted of theft in two cases. The defendant distinguished what he did in the prior cases with the incident in the present case. The defendant testified that in the prior cases, he had targeted jewelry stores with no buzz locks so that if he took something he would be able to get out. The defendant also claimed that in the prior cases, he was selective with regard to cut, clarity, and color. The offender in the instant case just wanted to see something big.

After considering the above evidence, the trial court found the defendant guilty of robbery. The trial court subsequently conducted a sentencing hearing, at which the State introduced certified statements of the defendant's prior convictions in Indiana, of burglary in 1997 and of theft in 1998. The trial court also took judicial notice of the defendant's prior convictions of theft in Illinois that were stipulated to during the trial. The trial court sentenced the defendant to an extended term of 10 years' imprisonment. In sentencing the defendant, the trial court noted that it had considered all of the statutory factors

in mitigation and aggravation. In mitigation, the trial court noted that the defendant did not cause or threaten serious harm to the victim, was of a young age, and had a drug problem. In aggravation, the trial court noted that the defendant had an extensive criminal history and that others needed to be deterred from committing similar offenses. When the trial court admonished the defendant, it misinformed him that he did not need to file a motion to reconsider if he wished to appeal both the judgment of conviction and his sentence. The defendant filed a timely appeal.

The defendant's first contention on appeal is that he was not convicted beyond a reasonable doubt of robbery. More specifically, the defendant argues that the State failed to prove that he used force in taking the rings from Tsang.

It is not the function of the reviewing court to retry a defendant when considering a challenge to the sufficiency of the evidence. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). A criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains reasonable doubt of the defendant's guilt. *People v. Hobley*, 159 Ill. 2d 272, 313 (1994); *People v. Tye*, 141 Ill. 2d 1, 13 (1990). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. The determinations of the weight to be given to the witnesses' testimony, their credibility, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Steidl*, 142 Ill. 2d 204, 226 (1991); *Collins*, 106 Ill. 2d at 261. This standard applies whether the evidence is direct or circumstantial and whether the conviction is the result of a jury trial or a bench trial. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

■ A person commits robbery when he or she takes property "from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18—1(a) (West 2002). The gravamen of the offense of robbery is the use of force or threat of the imminent use of force; the use of force or threat of the use of force is the element that differentiates robbery from theft. *People v. Williams*, 23 Ill. 2d 295, 301 (1961); *People v. Downey*, 162 Ill. App. 3d 322, 331 (1987). " '[T]he degree of force necessary to constitute robbery must be such that the power of the owner to retain his property is overcome, either by actual violence physically applied, or by putting him in such fear as to overpower his will.' " *People v. Bowel*, 111 Ill. 2d 58, 63 (1986), quoting *Williams*, 23 Ill. 2d at 301.

■ Illinois follows the common-law rule that stealing is by violence

whenever it is effected by doing even the least injury to the person, or whenever the act of taking is accompanied by any degree of force employed to overcome resistance to such taking. *People v. Patton*, 76 Ill. 2d 45, 49 (1979); *People v. Houston*, 151 Ill. App. 3d 718, 721 (1986). Stated another way, an act may constitute robbery where a struggle ensues, the victim is injured in the taking, or the property is so attached to the victim's person or clothing as to create resistance to the taking. *People v. Merchant*, 361 Ill. App. 3d 69, 72 (2005). While the mere act of swiftly taking property from a victim's hands does not constitute robbery, when the slightest degree of force is used the act may constitute robbery. *Houston*, 151 Ill. App. 3d at 721. Furthermore, while the initial taking may be accomplished without force, the offense may still constitute robbery where the offender uses force to effectuate his departure or escape. *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999). "The offense of robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will." *People v. Dennis*, 181 Ill. 2d 87, 102 (1998).

■ We believe that the evidence was sufficient to prove that the defendant committed robbery. Tsang's and Loeffler's testimony established that on the morning of August 16, 2002, the defendant entered Lenna's Jewelers in Hinsdale and asked to see an engagement ring with a big diamond. Tsang pulled out two rings to show the defendant. The defendant grabbed them out of Tsang's hands and ultimately ran out of the store. Although the defendant did not use force in removing the rings from Tsang's hands, the defendant did use force in effectuating his escape. A struggle ensued between Loeffler and the defendant. The defendant pushed Loeffler out of the way and also threatened to hurt her if she did not let him go.

The defendant argues that he did not use or threaten force against Tsang, the alleged victim in this case. Rather, he argues that he used or threatened force only against Loeffler. We disagree. Although force was not actually applied to Tsang's person, force was used in Tsang's presence. In the presence of Tsang, the defendant pushed and struggled with Loeffler to make his getaway. The force directed against Loeffler implicitly threatened the use of force on Tsang and suspended Tsang's will to prevent the taking of the rings. As noted above, robbery is proved where the degree of force is such that the power of the owner to retain his or her property is overcome either by physical violence directly applied *or by putting the owner in fear thereof. Bowel*, 111 Ill. 2d at 63. In sum, the force directed against Loeffler put Tsang in fear of actual physical violence and, thus, was sufficient to prove the robbery of Tsang.

In *People v. Ware*, 168 Ill. App. 3d 845, 846 (1988), the Illinois Ap-

pellate Court, Third District, upheld a similar conviction of robbery where force was not actually applied to the victim's person but rather was used in the victim's presence. *Ware*, 168 Ill. App. 3d at 846. In that case, like the present, the defendant never physically touched the victim or directed a verbal threat at her. *Ware*, 168 Ill. App. 3d at 846. However, the court held that the defendant's acts of smashing the victim's car window with a metal object, leaning into the victim's car, and snatching the victim's purse sufficiently established the element of force. *Ware*, 168 Ill. App. 3d at 846. The court found that there was "an implicit threat, inherent in the defendant's conduct, of the imminent use of more force if [the victim] tried to stop him from taking the purse." *Ware*, 168 Ill. App. 3d at 846.

The cases cited by the defendant, *People v. Gaines*, 88 Ill. 2d 342 (1981), and *People v. Tyllas*, 96 Ill. App. 3d 1 (1981), are inapplicable. In both *Gaines* and *Tyllas*, the convictions of robbery were overturned because the defendants in those cases did not take anything from the alleged victims. *Gaines*, 88 Ill. 2d at 367-68; *Tyllas*, 96 Ill. App. 3d at 7. The convictions were not overturned because force was not used or threatened against the victims.

In conclusion, the evidence was sufficient to convict the defendant of robbery. In so ruling, we reject the defendant's alternative argument that he was not proved guilty as charged in the indictment. The defendant argues that the State improperly charged him with robbery of Tsang, when Loeffler was the true victim. The defendant, relying on *People v. Jones*, 53 Ill. 2d 460 (1973), argues that the identity of a robbery victim is an essential allegation of an indictment charging that offense. However, as explained above, Tsang was a victim of the robbery. The defendant took rings from Tsang's presence using force and threats of force in effectuating his escape.

The defendant's next contention is that the trial court failed to admonish him pursuant to Supreme Court Rule 605(a) (188 Ill. 2d R. 605(a)). He argues that the cause must be remanded to the trial court for him to receive the appropriate admonishments. The State acknowledges that the trial court failed to admonish the defendant in accordance with Rule 605(a). However, the State maintains that pursuant to *People v. Henderson*, 217 Ill. 2d 449 (2005), the defendant's case need not be remanded, due to a lack of prejudice.

In *Henderson*, the defendant appealed his convictions of robbery and aggravated battery, arguing, among other things, that he did not receive admonishments in accordance with Rule 605(a). *Henderson*, 217 Ill. 2d at 454. In considering the defendant's argument, the supreme court held that "where a defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues

for appeal, remand is required only where there has been prejudice or a denial of real justice." *Henderson*, 217 Ill. 2d at 466. The supreme court then determined that since the defendant had raised no sentencing issue, he was neither prejudiced nor denied real justice. *Henderson*, 217 Ill. 2d at 469. Thus, a remand was not required. *Henderson*, 217 Ill. 2d at 470.

In this case, we do not believe that a remand is required. The defendant was neither prejudiced nor denied real justice due to the insufficient admonishments he received. Although the defendant failed to file a motion to reconsider his sentence, the only sentencing issues he raises on appeal are without merit.

First, the defendant argues that the trial court improperly imposed an extended-term sentence. Clearly, the defendant was eligible for an extended-term sentence. The offense of robbery, a Class 2 felony, has a sentencing range of between three and seven years' imprisonment. 720 ILCS 5/18—1(b) (West 2002); 730 ILCS 5/5—8—1(a)(5) (West 2002). However, pursuant to section 5—8—2(a)(4) of the Unified Code of Corrections (730 ILCS 5/5—8—2(a)(4) (West 2002)), a trial court may impose an extended-term sentence of between 7 and 14 years' imprisonment where:

> "a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." 730 ILCS 5/5—5—3.2 (b)(1) (West 2002).

Here, at the sentencing hearing, the State introduced a certified copy of the defendant's conviction of burglary in 1997. This prior conviction qualified him for an extended-term sentence.

■ Finally, in his reply brief, the defendant argues that his sentence was excessive. The trial court has great discretion in imposing a sentence; consequently, a sentence within the statutory range will not be reduced on appeal absent an abuse of that discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). The trial court should carefully weigh any aggravating and mitigating factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age, in an effort to arrive at a fair and just result. *People v. Palmer*, 162 Ill. 2d 465, 483-84 (1994). Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of an individual case. *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Thus, a sentence within the statutory limits will not be deemed exces-

sive unless it was greatly at variance with the spirit and the purpose of the law or manifestly disproportionate to the nature of the offense. *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

In the instant case, the trial court did not abuse its discretion in imposing the defendant's sentence. As noted above, the offense of robbery is a Class 2 felony punishable by a prison term of between three and seven years. However, due to his prior conviction, the defendant was eligible to receive an extended-term sentence of between 7 and 14 years' imprisonment. The trial court's 10-year sentence was within the permissible sentencing range. In arriving at the defendant's sentence, the trial court considered all of the applicable sentencing factors. In mitigation, the trial court noted that the defendant was a young man with a drug problem and that he did not cause serious harm to his victim. However, in aggravation, the trial court noted that the defendant had an extensive criminal history and that others needed to be deterred from committing similar crimes. In sum, the trial court considered the relevant factors and fashioned a sentence within the appropriate range. As such, it committed no error in sentencing the defendant.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.